# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**CARLOS SHURICK,**

        **Plaintiff,**

-vs-                                            **Case No. 6:07-cv-1974-Orl-31GJK**

**THE BOEING COMPANY,**

        **Defendant.**

## ORDER

This matter comes before the Court on the Motion for Summary Judgment (Doc. 33) filed by the Defendant, the Boeing Company ("Boeing"), the Motion for Partial Summary Judgment[1] (Doc. 45) filed by the Plaintiff, Carlos Shurick ("Shurick"), and both parties' responses and replies (Doc. 43, Doc. 51, Doc. 52, Doc. 55, Doc. 58) to those motions .

**I.    Background**

According to the allegations of his Verified Complaint, Shurick worked for Boeing in Brevard County, Florida from January 1990 until July 11, 2007. (Doc. 2 at 1). Some of the work Boeing does for NASA involves anhydrous ammonia, a hazardous material that can cause serious injury or death if inhaled. (Doc. 2 at 2). While working for Boeing, Shurick was required to be trained and certified in the use of a respirator. (Doc. 2 at 2). The respirator that was utilized by Boeing was the MSA Ultra twin cartridge full-face negative-pressure respirator (the "MSA

---

[1] In his motion, the Plaintiff seeks summary judgment as to liability on the same grounds he asserts in opposition to the Defendant's motion.

respirator"). Boeing contracted with another company to conduct the training and to determine whether the MSA respirator properly fit the employees, a process referred to as "fit-testing". (Doc. 2 at 2).

Shurick requires corrective eyeglasses. (Doc. 2 at 2). The side bars of traditional eyeglasses prevent some types of respirators, including the MSA respirator, from making a proper, air-tight seal against the wearer's face. Shurick contends that, for several of the annual training and certification cycles before 2007, Boeing did not provide him with "a respirator that would properly seal against his face and effectively secure his eyeglasses in place when the respirator would be in use." (Doc. 2 at 2). In June 2007, Shurick refused to submit to fit-testing, saying the respirator provided was inadequate. (Doc. 2 at 2). He persisted in his refusal, and was fired for doing so in July 2007. (Doc. 2 at 2.) He contends that his firing violated Florida's Whistleblower Act, Fla. Stat. §§ 448.01 *et seq*.

## II.     Legal Standards

### A.     Summary Judgment

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### B. Florida Whistleblower Act

The Florida Whistleblower Act is designed to protect private employees who report or refuse to assist employers who violate laws enacted to protect the public. *Arrow Air, Inc. v. Walsh*, 645 So. 2d 422, 424 (Fla. 1994). The act provides, in pertinent part, that an employer "may not take any retaliatory personnel action against an employee because the employee has . . . [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). The act is remedial in nature and should be construed liberally in favor of granting access to the remedy so as not to frustrate the legislative intent. *See Irven v. Dep't of Health and Rehabilitative Servs.*, 790 So.2d 403, 406 (Fla.2001); *Martin County v. Edenfield*, 609 So.2d 27, 29 (Fla.1992).

Under Florida law, a whistleblower's claims are analyzed using the same framework used for Title VII retaliation claims. *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1132-33 (Fla. 4th DCA 2003). To establish a *prima facie* claim of retaliation, therefore, the plaintiff must show that he (1) engaged in statutorily protected activity; (2) suffered an adverse employment action; and (3) there is some causal relation between the two events. *Id.* Once the *prima facie* case is established, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action. *Id.* The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. *Id.*

### C. OSHA Regulations

The use of respirators in the work place is governed by OSHA regulations, including 29 U.S.C. § 1910.134 ("Section 1910.134"), titled "Respiratory Protection". Section 1910.134(a)(2) requires an employer to provide a respirator to each employee when such equipment is necessary to protect the employee's health, to make sure those respirators are suitable for the intended purpose, and to establish a respiratory protection program, including fit-testing. The regulation defines fit test as "the use of a protocol to qualitatively or quantitatively [2] evaluate the fit of a respirator on an individual." 29 U.S.C. § 1910.134(b). An employee must be fit tested before being required to use any respirator with a tight-fitting facepiece, and at least annually thereafter. 29 U.S.C. § 1910.134(f)(2).

---

[2] According to the regulation, a qualitative fit test ("QLFT") assesses the adequacy of the fit by asking questions of the person wearing the respirator, while a quantitative fit test ("QNFT") does so by measuring the amount of leakage into the respirator. 29 U.S.C. § 1910.134(b).

### III. Analysis

It is not disputed that Shurick, who was fired in July 2007, suffered an adverse employment action. Therefore, to establish his *prima facie* case under the Florida Whistleblower Act, Shurick must establish that he objected to, or refused to participate in, some Boeing activity, policy, or practice that was in violation of a law, rule, or regulation, and that there was a causal relationship between his objection or refusal on the one hand and his firing on the other.

As set forth in his response to the motion for summary judgment, the crux of Shurick's allegation against Boeing is that the company violated OSHA regulations by failing to make sure that he would be able to wear his corrective lenses while using the respirator. (Doc. 43 at 2). He admits that Boeing had previously provided him with lens inserts, which were designed to fit entirely inside the facepiece without affecting its seal. Shurick contends the inserts, which attached to the inside of the respirator by way of suction cups, did not work properly. He says that the inserts were very uncomfortable, did not allow him to see properly, and sometimes became dislodged, requiring him to break the respirator's seal to reach in and restore them to their proper position. (Doc. 43 at 2).

As Shurick characterizes it, he "put his foot down" in June and July 2007, believing that his objection and refusal to undergo "another sham fit test" would convince Boeing to fix the problem. (Doc. 43 at 5). He contends that Boeing's requiring him to undergo a fit test while wearing the suction-cup lens inserts it had provided violated 29 C.F.R. § 1910.134, appx. A, Pt. I. A. 13, which requires that the fit test be performed "while the test subject is wearing any applicable safety equipment that may be worn during actual respirator use which could interfere with respirator fit." (Doc. 43 at 7-8).

Shurick's allegations are beside the point. If the inserts interfered (or could interfere) with the fit of the respirator, that would not establish that Boeing violated 29 C.F.R. § 1910.134, appx. A, Pt. I. A. 13, as Shurick alleges, or that by refusing to participate in the test he was refusing to participate in a violation of an OSHA regulation.[3] Rather, it would establish that Shurick *needed to wear the insert during any fit test*. Thus, by refusing to attend the fit test, Shurick was not refusing to participate in an "activity, policy, or practice of the employer which [was] in violation of a law, rule, or regulation." This is fatal to his claim under the Florida Whistleblower Act.

In addition, throughout his papers, Shurick alleges that Boeing violated other OSHA regulations – by failing, for example, to provide him with a usable lens insert or by refusing to allow him to select a different respirator and be retested. (Doc. 43 at 9-10). Even assuming these other alleged violations occurred, and further assuming that Shurick made his objections known to his employer, it would not be enough to salvage his whistleblower claim. The evidence is undisputed that Shurick was fired, not for protesting any other alleged violation, but for repeatedly refusing to report for fit-testing. Thus, Shurick has not established the required causal link between these other alleged objection(s) and the adverse employment action. In addition, because Shurick cannot show that the fit-testing violated any rule or regulation, his refusal to participate in

---

[3]The pertinent regulation also contemplates that there will be situations where an employer will determine that the employee passed the fit test, but the employee will disagree: "If, after passing a [fit test], the employee subsequently notifies the employer . . . that the fit of the respirator is unacceptable, the employee shall be given a reasonable opportunity to select a different respirator facepiece and to be retested." 29 C.F.R. § 1910.134(f)(4). Stated differently, the regulations do not require an employer to address all of an employee's fit-related concerns before requiring him or her to take the fit test, as Shurick seems to suggest.

fit-testing gave Boeing a legitimate, non-retaliatory reason for firing him, regardless of any other practices he may have objected to or protested.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion for Summary Judgment (Doc. 33) filed by the Defendant, the Boeing Company, is **GRANTED**, and the Motion for Partial Summary Judgment (Doc. 45) is **DENIED**. The case is **REMOVED** from the March, 2010 trial docket. The Clerk is directed to enter judgment for the Defendant and close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 20, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party